GOHLMAN, LESTER & COMPANY v. J. W. WHITTLE et al.

No. 4066.   Decided June 10, 1925.

(273 S. W., 808).

1.—Husband and Wife—Wife's Separate Property—Control—Rents Therefrom.

Our present statutes grant to the wife sole management, control and disposition of her separate property and of community property consisting in rents and revenues therefrom. (Act of March 21, 1913, Laws, 33d Leg., ch. 32, p. 61; Act of April 4, 1917, Laws, 35th Leg., ch. 194, p. 436; Act of March, 1921, Laws, 37th Leg., ch. 130, p. 251). She has authority to bind herself by a contract to market in a customary manner the cotton raised on her separate land, and to make her separate property liable thereon, her power in disposing of same being as broad as that allowed the husband with respect to his own separate property. Whitney Hardw. Co. v. McMahan, 111 Texas, 242, followed. (Pp. 556, 557).

2.—Same—Agency—Undisclosed Principal.

The authority given the wife by statute to control rents and revenues from her separate property (cotton raised on her land) may be exercised through an agent, and her husband may be made such agent. If he acts in his own name in so doing, she being the undisclosed principal, she becomes bound by his contracts and her separate property liable thereon. (Pp. 557, 558).

3.—Same.

The statutes exempting the wife's separate property and the community property confided to her control from debts contracted by the husband has no application to a debt contracted by the wife, as disclosed or undisclosed principal, though it be entered into by her through her husband as agent. (Pp. 558, 559).

4. Pleading—Constitutional Law—Statute.

The court will always adjudicate whether a statute is unconstitutional or not, if it is necessary to a decision of the case, regardless of when or how the question is raised. (Pp. 559, 560).

5.—Same.

Plaintiff asserted liability against a married woman on the assumption that the transactions from which it was claimed to arise concerned cotton raised on her land and made by statute her separate property. Though the validity of such statute was not attacked by defendant, the court was not precluded from determining the true status of the property (held to be community because the statute declaring it separate was unconstitutional). Arnold v. Leonard, 114 Texas, 535. (P. 559).

6.—Husband and Wife—Agency—Contract—Case Stated.

The husband, managing by authority of his wife her separate real property, contracted for the sale of cotton raised thereon through brokers, who advanced money thereon, holding it for a favorable market. It was partly rent cotton, partly cotton of tendants subject to advancements made by the landlord to enable them to make a crop, and the husband gave his notes for margins demanded by the brokers to protect their advancements. Such transaction being the customary way of handling such rental and marketing transactions, it was error to hold the wife exempt from liability of her separate estate on such contracts by her husband as her agent. (Pp. 560, 561).

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

Gohlman, Lester & Co. sued J. W. Whittle and wife, and recovered judgment against him, but were denied recovery against the wife. On plaintiffs' appeal the judgment was affirmed (254 S. W., 595) and thereupon they obtained writ of error.

*Andrews, Streetman, Logue & Mobley,* and *Cole, Cole, O'Connor & Jones,* for plaintiffs in error.

The court erred to the prejudice of appellants in his Fifth Conclusion of Law, wherein the court held as a matter of law that the appellants were not entitled to recover anything against the appellee, Mrs. Ada T. Whittle, as the undisclosed principal of her co-appellee, J. W. Whittle, either severally or jointly with him, for any deficiency which might be due the appellants after the sale of the cotton shipped to the appellants and the receipt of the proceeds by them therefor.

The Court of Civil Appeals erred to the prejudice of appellants in construing that portion of Article 4621 Revised Statutes, wherein it is provided that "neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband," in such manner as to hold that by reason of said provision the wife would never be liable on obligations contracted on her behalf and on behalf of her separate estate by the husband in cases where the husband did not disclose that he was acting on her behalf, and wherein he was acting ostensibly for himself; in other words, the court erred in holding that by virtue of said statute the wife could never be the undisclosed principal of her husband. Whitney Hardware Company v. McMahon, 231 S. W., 694; Barber v. Keeling, 204 S. W., 139; Pugett Sound Lumber Company v. Krug, 89 Calif., 237, 26 Pac., 902; Harris v. Silverman, 154 Mo. App., 694, 136 S. W., 23; Cater v. Eveleigh, 6 Am. Dec., 596; Mechem on Agency (2d Ed.), Vol. 1; Secs. 169-170; 30 C. J., Sec. 173, p. 624; Pinkston v. Cedar Hill Nursery, etc., Co., 123 Ga., 302, 51 S. E., 387; Colt v. Lawrenceburg Lbr. Co., 44 Ind. App., 123, 88 N. E., 720; Kuenzer v. Stevens, 155 Mo., 280, 56 S. W., 1076; Whipple v. Webb, 44 Misc., 332, 89 N. Y. S., 900; Metropolitan Tobacco Co. v. O'Connor, 144 N. Y. S., 756; Porter v. Staten, 64 Miss., 421, 1 So., 487; Kempner v. Dillard, 100 Texas, 505; Parrott v. Peacock Military College, 180 S. W., 132; Moseley v. Straten, 203 S. W., 397; Crutcher v. Sligar, 224 S. W., 227; Wetzel v. Simon, 87 Texas, 403; Presnall v. McLeary, 50 S. W., 1076; Rogers v. Roberts, 35 S. W., 76;; Traynham v. Jackson, 15 Texas, 170, 65 Am. Dec., 152; Watring v. Gibson, 100 S. E., 68.

Where appellants' petition on which they went to trial contained allegations that as cotton factors they had made advancements and paid freight and storage and insurance charges on cotton which was the separate property of a married woman, the appellee, Mrs. Ada T. Whittle, and that they had always dealt with her husband, in ignorance of the fact that said husband was the agent for his wife as undisclosed principal; that the making of advancements on cotton was a usual and customary method obtaining in the marketing of cotton; and sought a personal judgment against the wife for the repayment of such advances and other charges, such allegations were sufficient to charge the wife, Mrs. Ada T. Whittle, personally and to hold her personally liable for the repayment to appellants of such advancements and charges, and the court erred in sustaining her demurrer to such allegations in plaintiffs' petition.

Article 4621 committing to a married woman "the sole management, control and disposition of her separate property, both real and personal," she is not limited to the doing of only those things which are absolutely necessary in the exercise of the power thus conferred, but she is authorized to follow any usual and customary methods in the exercise of such powers as ordinarily obtain and are adopted by the business world. It would operate as an unjust and undue discrimination against married women, to give them such unconditional power in plain legislative terms, and yet to restrict the exercise thereof in such manner as to not permit them the same freedom in the enjoyment of such powers as would be accorded men or feme soles; and it was error on the part of the trial court, adhered to and participated in by the Court of Civil Appeals, in holding that Mrs. Whittle would not have authority to market her cotton by drawing advancements against it, the same being found to have been a usual and customary method of marketing the same. Article 4621 Vernon's Sales' Texas Statutes, 1922 Supplement; Whitney Hardware Co. v. McMahan, 111 Texas, 242, 231 S. W., 694, 1117; Goldberg v. Zellner, 235 S. W., 870, reversing 220 S. W., 587; Williams v. Doan, 209 S. W., 761; Ballard v. Carmichael, 83 Texas, 355, 18 S. W., 734; Word v. Kennon, 75 S. W., 365; Hollis v. Cartwright, 5 Texas, 152; Milburn v. Walker, 11 Texas, 329; Cater v. Eveleigh, 6 Am. Dec. (S. C.) 596; Brown v. Thompson, 31 S. C., 436, 17 Am. St. Rep., 40; Smith's Admr. v. Poythress, 2 Fla., 92, 48 Am. Dec., 176; Cookson v. Toole, 59 Ill., 520, 521; Duren v. Getchell, 55 Me., 248; Frecking v. Rolland, 53 N. Y., 425; Bodine v. Kileen, 53 N. Y., 92; McVey v. Cantrell, 70 N. Y., 295; Tufts v. Copen, 37 W. Va., 529, 16 S. E., 793; Sedway v. Nichol, 34 S. W., 529; Smith v. Kaufman, 224 S. W., (Ark.) 978; Porter v. Staten, 64 Miss., 421, 1 So., 487; 2 Bishop on Law of Married Women, Sec. 21; 21 Cyc., p. 1468.

The fact that our Supreme Court has settled as recognized by Judge Pleasants, that she can bind herself through her husband when her

identity is disclosed, eliminates the necessity of considering that proposition, and leaves open only the question of the correctness of the Court of Civil Appeal's ruling that she could not be bound as an undisclosed principal. The authorities on this question are not numerous, but where we have seen the question squarely presented, it was held that the wife would be liable. Pugett Sound Lumber Co. v. Krug, 89 Calif., 237, 26 Pac., 902; Harris v. Silverman, 154 Mo. App., 694, 136 S. W., 23; Cater v. Eveleigh, 6 Am. Dec. (S. C.) 596. Pinkston v. Cedar Hill Nursery Co., 123 Ga., 302, 51 S. E., 387; Colt v. Lawrenceburg Lbr. Co., 44 Ind. App., 123, 88 N. E., 720; Kuenzer v. Stevens, 155 Mo., 280, 56 S. W., 1076; Whipple v. Webb, 89 N. Y. S., 900, Aff. (App. Div.) 92 N. Y. S., 1150; Metropolitan Tobacco Co. v. O'Connor, 144 N. Y. S., 756; Mechem on Agency (2nd Ed.), Vol. 1, Secs. 169-170; 30 C. J., Sec. 173, p. 624.

The principal insistence, of the defendant is that the wife's separate property is not liable for debts "contracted by the husband." We do not disagree with the language of the statute, but we do insist that it is a clear *petitio principi* to assume that this debt was "contracted by the husband." Our very insistence was that it was contracted by the wife—through the husband of course—but nevertheless by the wife. In other words, we insist upon the application of the just and familiar principle of agency, that what one does through an agent, he does by himself. If the husband had contracted expressly as agent for the wife, the debt would have been contracted by him as much as it was in the present instance; nevertheless, it would not have been in that case a debt contracted by the husband, but a debt contracted by the wife through her husband as agent, for which she would be liable under the decision of this court in Whitney Hardware Co. v. McMahan, 111 Texas, 242.

Under the Act of 1913, without reference to the amendment of 1917, full authority was conferred upon the wife to make all contracts properly pertaining to the management, control and disposition of the rents and revenues from the wife's separate land, and the wife being thereby invested with the authority to make such contracts, her separate property became liable under such contracts whether such rents and revenues were a part of her separate property or not.

*Woods, King & John,* for defendants in error.

The contract obligation of the husband, in his own name, accepted by a creditor who extends the credit to the husband solely on the husband's promise, cannot, under the laws of Texas, be charged against the wife on any theory that the husband was acting as agent for his wife, an undisclosed principal. Authorities relied on: Art. 4621, R. S., as Am. 1913; Art. 4624, R. S. as Am. 1913; Art. 4629, a-d, Complete Texas St., 1920; Art. 2970, R. S., 1895; Red River Nat. Bk. v. Ferguson, 109 Texas, 287, 206 S. W., 924; Lauer v. Bandow, 28

Am. Rep., 574; Reese, Gabriel & Co. v. Cornell, 154 N. W., 1002; Sanger v. Warren, 91 Texas, 482, 44 S. W., 477; Menard v. Schneider, 48 S. W., 761; Harris v. Williams, 44 Texas, 124; Whitney Hdw. Co. v. McMahan, 111 Texas, 242, 231 S. W., 694; Kellett v. Trice, 95 Texas, 168, 66 S. W., 51; Wadkins v. Watson, 86 Texas, 194, 24 S. W., 385; Book v. Jones, 98 S. W., 891. Further Authorities mentioned in remarks: Art. 6001-a, Sec. 18, Complete Texas St., 1920; Bolan v. Wrather, 239 S. W., 279; Brown v. Ector, 19 Texas, 347; Callendar, Holder & Co. v. Short, 78 S. W., 367; Chapin v. Frank, 236 S. W., 1009; Christmas v. Smith, 10 Texas 123; Corpus Juris, V. 2, pp. 816-817; id., V. 17, p. 501; Ervin v. Ervin, 128 S. W., 1139; Glasscock v. Hamilton, 62 Texas, 151; Haynes v. Stovall, 23 Texas, 625; J. L. Collins Piano Co. v. Adams & Allcorn, 216 S. W., 420; Keighley Maxsted Co. v. Durant, 1 B. R. C., 353, 388; Magee v. White, 23 Texas, 180; McClenny v. Floyd, 10 Texas, 164; McFaddin v. Crumpler, 20 Texas, 374; Minnick v. Dreyer Motor Co., 227 S. W., 365; Mississippi v. Johnson, 71 U. S., 500, 18 L. Ed., 441; Mosley v. Stratton, 203 S. W., 397; Negociacion Agricola, etc. v. Love, 220 S. W., 232; Parrott v. Peacock Military College, 180 S. W., 132; Richey v. City of S. A., 217 S. W., 214; S. Blaidsdell Jr. Co. v. Citizens Nat. Bk., 96 Texas, 627; Stansbury v. Nichols, 30 Texas, 145; Tex. Uniform Neg. Instruments Law, Reg. Sess. 36th Leg. Ch. 123, Sec. 18, p. 193; Theo. Keller Co. v. Mangum, 161 S. W., 19; Warren v. Smith, 44 Texas, 245.

A married man, the general agent of his wife, farming the wife's lands and marketing the crops raised thereon for the purpose of supporting his family, who on his own credit procures from cotton factors an advance against a consignment of cotton, three-fourths of which belongs to third parties, but against which three-fourths the wife has a lien, one-eighth of which belongs to the community as earnings of the husband, and one-eighth of which belongs to the wife, is not acting as agent for his wife, as the undisclosed principal, in incurring the contingent obligation of indemnifying the factors against loss occasioned by decline in the market. Authorities relied on: Beckhausen v. Hamblett, 2 Q. B. (Eng.) 18; H. Midwood Son's Co. v. Alaska-Portland Cement Co., 13 Ann. Cas., 954; Corpus Juris, V. 2, p. 670; Cyc. V. 30, pp. 483-484; Fraser v. Sweet, 2 B. R. C., 254; Willis v. Hill, 31 Am. Dec., 412; Hill v. Conrad, 91 Texas, 345; Arnold v. So. Pine Lbr. Co., 123 S. W., 1167. Further authorities mentioned in remarks. Barbin v. Couvillon, 47 So., 698; Courrege v. Colgin, 25 So., 942; Lanphier's Succession, 29 So., 122; Trezevant v. Holmes, 38 La. Ann., 146.

A married woman is not empowered under the laws of Texas to give her personal obligation, or to subject her separate estate to liability beyond that part of it pledged or mortgaged for the purpose, in order to secure an advance on a shipment of cotton to factors, three-fourths of the cotton and of the funds advanced thereon belonging to

third parties, one-eighth to her husband or their community, and one-eighth to the wife; the obligation being to pay any deficiency that may exist if the cotton does not sell for enough to reimburse the factors for the amount of advances, expenses incurred by them and commissions, and the whole transactions being a speculation on the rise or fall of the cotton market. Authorities relied on: Art. 4629, a-d, Complete Texas Statutes, 1920; Art. 4624, R. S., as Am., 1913; Re Joseph P. Murphy Estate, 63 Atl., 745; Wadkins v. Watson, 86 Texas, 194; Whitney Hdw. Co. v. McMahan, 231 S. W., 694; Red River Nat. Bk. v. Ferguson, 109 Texas, 287, 206 S. W., 924; Johnson v. Scott, 208 S. W., 671; Lynch v. Elkes, 21 Texas, 229; Mills v. Frost Nat. Bk., 208 S. W., 698; Grimes v. Hagood, 19 Texas, 246; Grimes v. Hagood, 27 Texas, 693; Gihon v. Stanton, 9 N. Y., 476. Further authorities mentioned in remarks: Butler v. Robinson, 11 Texas, 142; Dickinson v. Griffith Lumber Co., 213 S. W., 341; Ballard v. Carmichael, 83 Texas, 355; Sidway v. Nichol, 34 S. W., (Ark.), 529; Williams v. Doan, 209 S. W., 761.

MR. JUSTICE GREENWOOD, delivered the opinion of the court.

By their third amended original petition plaintiffs in error alleged that on and subsequent to March 15, 1920, they as cotton factors had made advancements and paid freight, fire insurance, and storage on 193 bales of cotton which belonged to the separate estate of defendant in error Mrs. Ada T. Whittle and which had been consigned to them under a contract between them and defendant in error J. W. Whittle. Plaintiffs in error sought to recover of defendant in error, Mrs. Ada T. Whittle, or of both defendants in error, large sums alleged to be balances due for the advancements made on the cotton or for charges for its transportation, insurance, and storage.

Plaintiffs in error sued out an attachment which was levied on several tracts of land.

After setting forth the consignment contract and the amounts claimed for advancements on the cotton and charges against same, as well as various notes executed by defendant in error J. W. Whittle for margins to secure plaintiffs in error against declines in the market value of the cotton, plaintiffs in error. alleged:

"That plaintiffs are advised and believe that at the time the said J. W. Whittle shipped them said cotton and drew said advancements against said cotton and executed said notes as additional margin on said cotton, that said cotton was the separate property of his wife, Ada T. Whittle, and that in all said transactions the said J. W. Whittle was acting as the agent for his wife, with her full knowledge and consent, she being then and there at all times the undisclosed principal of the defendant, J. W. Whittle; that plaintiffs did not know at the time said cotton was shipped to them and at the time of the transaction hereinabove detailed, including the making of said

advancements and the execution of said notes by the defendant, J. W. Whittle, that he was acting as the agent of his wife, who was his undisclosed principal; and in this connection plaintiffs allege that the said J. W. Whittle, acting as agent for his wife, defendant Ada T. Whittle, had full authority from her to market said cotton and to do any and all things reasonable and necessary to the marketing thereof; that it is the customary and usual method of marketing cotton for the owner to ship the same to cotton factors for sale and to draw advancements against the same; and plaintiffs allege that by reason of the premises, and by reason of the shipping of said cotton to plaintiffs and drawing advancements against the same, and that by reason of the making, executing and delivery of said notes as additional margins by the said J. W. Whittle, that the defendant, Ada T. Whittle, as his undisclosed principal, became bound, liable and promised to pay plaintiffs. the full sum of said advancements and of said additional margins represented by said notes executed by the said J. W. Whittle; and in this connection plaintiffs show the court that said notes provided for ten per cent attorneys' fee if not paid when due and turned over to an attorney for collection, and said notes having been defaulted in and having been turned over to attorneys for collection, that said additional ten per cent on the principal and interest thereof is now due and payable, as attorneys' fee.''

Besides a general demurrer, Mrs. Ada T. Whittle presented various special exceptions to plaintiffs in error's petition, and pleaded, in addition to a general denial, that the consigned cotton was community property of herself and husband, disclaiming title in her separate estate, and that she was under the disabilities of coverture from the date of the consignment contract.

Defendant in error J. W. Whittle answered with a general denial and special pleas charging plaintiffs in error with negligence in handling the cotton and seeking to recover of plaintiffs in error actual and punitive damages for the wrongful and malicious issuance and levy of the attachment.

The District Court found that 193 bales of cotton were consigned to plaintiffs in error by defendant in error J. W. Whittle and that advancements were made and charges incurred against same as alleged, all in accord with an usual and customary method of marketing cotton.

The District Court further found:

''That the land on which the cotton was grown, which was shipped to plaintiffs and on which said advancements and charges accrued, was the separate property of the defendant Mrs. Ada T. Whittle; that the defendant J. W. Whittle, as the husband of defendant Ada T. Whittle, and with her full authority and consent, and as her agent, had full charge, supervision, and management of said farms, which lay in Hardeman County, Tex., and had charge of the renting of said

farms and the cultivation thereof and the marketing and selling of said cotton, and all the income to be derived from said crops was used by them for their mutual benefit.  That the farms were rented to several different tenants, who produced the cotton on the land which was shipped to the plaintiffs, under contracts by which the tenants would own certain portions of the crop and the owner of the land would own the proper portion; and plaintiffs offered to introduce testimony to show that advancements were made to said tenants to enable them to plant and produce said crops, and that the advancements made by the plaintiffs against said cotton were for the purpose of repaying the advancements made by the owner of said land to the tenants to enable the tenants to cultivate said crops, but the court refused to permit the introduction of said testimony, because of the court's ruling that in no event under the allegations could the defendant, Mrs. Ada T. Whittle, be held liable for any deficiency judgment that might be recovered, as the undisclosed principal of the defendant J. W. Whittle or otherwise.  That the respective portions of the ownership of the cotton crops on said land belonging to Mrs. Whittle was three-fourths to the tenants planting and cultivating the same and one-fourth to the owner of the land.  That the status between the defendants J. W. Whittle and wife with regard to the management of said farms and the marketing of said crops is shown by the following testimony of said two witnesses:

"The defendant, J. W. Whittle, in answer to the fourteenth interrogatory in his deposition, testified:

" 'I managed and supervised the renting of the land, the planting of crops and the marketing of the crops.  I had an arrangement with my wife whereby I managed and supervised the renting of the land, the planting of the crops and marketing them, and we used the rentals and proceeds of the land and cotton for the support of our family. That is, my time and labor offset the use of the land, and the earnings from the land was divided half and half between us, out of which we lived and supported our family.' "

Mrs. Whittle testified in answer to cross-interrogatories numbered 40 and 41, as follows:

" 'My husband has attended to the management of the farms, the cultivation and planting of the same, but they are my property, and he has not managed them by any right claimed by him, but simply from the natural interest that he had in me and our family and in trying to make my property return as large a revenue as it could be made to return.' "

" 'My husband is the only person who has over-seen the farms and attended to the crops raised thereon and to the marketing of the crops, and this has at all times been entirely agreeable to me, and is agreeable to me now, and will continue to be agreeable to me, and I have never raised any objections to his doing so, but expect him to continue

to manage the farms for me as he has heretofore done, that is, as long as he is physically able to do so.' ''

The District Court sustained a general demurrer to the allegations of the petition in so far as plaintiffs in error sought to recover a personal judgment for any sum against defendant in error Mrs. Ada T. Whittle.

Defendant in error J. W. Whittle's action for damages for the alleged wrongful issuance and levy of the attachment was dismissed, and judgment was rendered in the District Court for defendant in error Mrs. Ada T. Whittle, and for plaintiffs in error against defendant in error J. W. Whittle alone for $18,522.23 with foreclosure of the attachment lien on the attached tracts of land and with foreclosure of the factors lien on the cotton on hand.

The Galveston Court of Civil Appeals affirmed the judgment of the District Court. ·254 S. W., 595.

According to the averments of the petition, which should have been regarded as true in ruling on the demurrer, the contract sued upon was made by a married woman, as undisclosed principal, acting through the agency of her husband, for the disposition in a customary manner of personal property belonging to her separate estate. The statute then and since in force seems to us to leave no doubt as to the power of a married woman to bind herself by such·a contract.

The laws of the Republic and of the State of Texas prior to 1913 gave to the husband the sole management of the separate property of the wife, and the sole management and disposition of the community property of the husband and wife. II Batts' Annotated Civil Statutes of Texas, pages 261, 262; Revised Statutes of 1879, Articles 2851, 2852; Revised Statutes of 1911, Articles 4621, 4622. Under these laws the wife had no right to manage and control her separate property or property belonging to the community, save in so far as she might act as authorized agent of her husband, or save in so far as she might act in place of her husband when circumstances rendered it impossible for him to act. Brown v. Brown, 61 Texas, 69; Speer's Law of Marital Rights in Texas, page 140. Being thus deprived of independent authority to deal with property, no liability could be enforced against her separate estate nor against the assets of the community by virtue of her unauthorized contracts. The Acts of 1913, 1917, and 1921 grant to the wife the sole management, control and disposition of her separate property, both real and personal, and exempt same from payment of debts contracted by the husband. Certain limitations apply to the conveyance of the wife's lands and the homestead, and to the transfer of her stocks and bonds. As respects cotton belonging to the wife's separate estate, the statutory provision since 1913 has been simply that it shall be subject to the wife's sole management, control and disposition. Her authority in disposing of this kind of property is as broad and unrestricted as is the au-

thority which the statute allows to the husband with respect to his own separate property.

We think the Legislature intended the wife to exercise contractual discretion—as complete and comprehensive as was formerly possessed by the husband—in the management and disposition of ordinary chattels such as cotton. Not only have the statutes since 1913 committed entire dominion over such property to the wife alone, but they have gone further and expressly exempted not only the husband's separate property but all community property except such as is placed under the wife's single control from the payment of debts contracted by the wife save for necessaries for herself or children. The almost obvious implication of the statutes is to make her separate property and the portions of the community committed to her charge liable for the payment of the wife's contracts entered into as necessary incidents to the exercise of her powers of management, control, and disposition. For, if such property is not so liable, then nothing is, and an intent cannot reasonably be ascribed to the Legislature to authorize an obligation and at the same time render its enforcement impossible.

The case of Whitney Hardware Co. v. McMahan, 111 Texas, 242, construed the Act of 1913 as necessarily conferring on the wife the power to make any and all such contracts as were requisite to make effectual her management, control and disposition of her separate property and of the portions of the community committed to her. That decision is conclusive that the wife can bind herself by a contract to market her cotton in a customary manner, since the power to dispose of cotton could hardly be effectually exercised without the use of the means and facilities customarily employed to realize the market value of that product.

The contentions are advanced, which were sustained by the Court of Civil Appeals, that though Mrs. Whittle was authorized to make such a contract as that sued upon, for the disposition of her separate personal property, no liability on her part was shown by the allegations of the petitition for two reasons: first, because the law binding an undisclosed principal has no application to a married woman; and second, because the law exempts the wife's separate property and the portions of the community placed under the wife's control from payment of any debt contracted by the husband.

It cannot be questioned that when the Acts of 1913, 1917, and 1921 were enacted, it was settled law in Texas, with regard to an undisclosed principal, that "the act of the agent made for his benefit and within the scope of the authority conferred by him is his act," and that "the undisclosed principal may sue on a contract made for him in the name of his agent, and for a similar reason he is held liable to be sued." Heffron v. Pollard, 73 Texas, 101, 11 S. W., 165. It would be absurd to say that married women were required to exercise

every power granted by these Acts—no matter how extensive the properties involved—without the aid of agents; and, we see no ground whatever for concluding that a married woman, in the exercise of her statutory powers, may not avail herself of the services of her husband as her agent when she prefers him, as in this case, above all others. A contract made for the wife's benefit, by her husband as her expressly authorized agent, is the wife's contract. She, for the estate she represents, is entitled to the benefits accruing from a contract made in her behalf as an undisclosed principal. She cannot have the right to avail herself of such benefits without assuming the contract's burden.

Mechem makes what we approve as an accurate statement of the law of undisclosed principal as applied to contracts of the wife authorized by statutes such as ours, when made through the agency of the husband, whether the agency be disclosed or undisclosed. He says in his work on Agency (2nd. Ed.) Vol. I, in Sections 169 and 170:

"It has been seen that within the limits of her power under modern statutes to enter into contracts, acquire, manage and dispose of property and carry on business a married woman may act by agent, and it is well settled that her husband may be the agent. A husband has however, by virtue of his relation alone, no implied power to act as the agent of his wife in the transaction of her business. Whatever authority he exercises in that capacity must be derived as in the case of any other agent from her prior appointment either express or implied, or be confirmed by her subsequent ratification. He may, however, be authorized in the same manner and be invested with the same power and authority as any other agent, and when duly authorized his acts bind her, within the limits of her capacity, and of his authority, to the same extent as though she acted in person."

"The usual attributes of agency also attach. Notice to her agent is notice to her, representations made by him affect her, the incidents of undisclosed agency apply to her, as in other cases of agency. The duties and disabilities of an agent also apply to him. Thus he cannot, for example, use his power for his own advantage. The third person, also, is bound in the same way and to the same extent as in any other case."

The statutory provision exempting the separate property of the wife and the portions of the community confided to her from payment of debts "contracted by the husband" has no application to a debt contracted by the wife as disclosed or undisclosed principal, though her husband be her agent in incurring the debt. For the debt is *contracted by the wife,* notwithstanding it be entered into by her through the agency of her husband. The provision abundantly protects the wife when so construed as to relieve her from the consequences of all contracts of the husband made without her authority. The provision

was not designed to limit the wife's own power to voluntarily bind herself and the property committed to her management.

It follows from the above conclusions that the District Court and the Court of Civil Appeals erred in holding the petition subject to general demurrer in so far as plaintiffs in error sought a personal judgment against defendant in error Mrs. Ada T. Whittle.

The case made by the petition involves a married woman's contract for the disposition of cotton belonging to her separate estate. The case made by the trial court's findings and the proof tendered and excluded involves a married woman's contract for the disposition of cotton, one-fourth of which represents rent of her separate lands and all of which is subject to a landlord's lien securing advances made by a married woman in the management of her separate lands.

It is earnestly insisted in behalf of defendants in error that the court's findings and the excluded evidence sustain the judgment discharging Mrs. Whittle. In support of this insistence, it is argued that the rent cotton and the claim for advances belonging to the community estate of J. W. Whittle and wife, no one except J. W. Whittle was or could be lawfully bound by the contract sued upon.

The Court has today decided, in answering questions certified from the Galveston Court of Civil Appeals, that under the Constitution no property can belong to the wife's separate estate which is acquired by her during marriage otherwise than by gift, devise or descent. Hence, the portions of the Acts of 1917 and 1921 which undertake to make rents of the wife's separate lands a part of her separate estate are void because violative of the Constitution. In answering the certified questions above mentioned, the Court has expressly upheld as valid the portions of said Acts conferring on the wife the sole management, control and disposition of certain portions of the community estate and of her separate lands and the rents thereof, subject to certain limitations, and exempting her separate property and portions of the community committed to her management, control and disposition from payment of debts contracted by the husband. Arnold v. Leonard, 114 Texas 535, 273 S. W., 799.

Applying the rules announced in the opinion in Arnold v. Leonard, the rents of Mrs. Whittle's land as well as the claim for advancements to her tenants, unless such advancements were made from monies from her own or her husband's separate estate, belonged to the common estate of herself and husband. We are not precluded from declaring the true status of the rents by reason of the fact that defendants in error in the courts below may not have attacked the validity of the provision of the statutes which purports to make rents of the wife's separate lands a part of her separate estate. The Court could not perform its duty to enforce the paramount law did it not refuse to give effect to a statute in conflict with the Constitution. So, the Court will always adjudicate whether a statute is constitutional, if it is nec-

essary to the decision of a case, regardless of when or how the question is raised. Hopson v. Murphy, 1 Texas, 315; Terrell v. Middleton, 108 Texas, 19; Barnes v. State, 75 Texas Crim., 188, L. R. A., 1915C., 101, 109; 170 S. W., 550, Cooley's Constitutional Limitations, pages 228, 229.

It does not necessarily follow that Mrs. Whittle could not bind herself to market the cotton under the agreement with plaintiffs in error because the rents and the claim for advancements were not her separate property.

It seems clear that under the findings Mrs. Whittle managed her lands and crops in a customary manner. She sought to realize an advantageous rent through the receipt of the landlord's usual portion of the crops. She made such advances as she considered necessary to enable the tenants to raise, gather, and market the crops. Without her consent, the tenants were forbidden by statute to remove the crops from the rented premises. In order to be secure in the collection of her rents and advances, she undertook to dispose of the crops, with a view to retaining the full amount due her and accounting to the tenants for the remainder. Not wishing to sell at prevailing market prices, the contract was made with plaintiffs in error, whereby she obtained certain advancements and was enabled to safely hold the cotton for better prices. In all of this, Mrs. Whittle was doing no more, in our opinion, than effectually exercising her sole authority, under the then governing statute, to manage her separate lands, and to manage and dispose of what appears from this record to have been community property committed to her sole management, control and disposition.

She could not have exclusive power to rent her separate lands unless she had authority to fix the terms of the rental contracts. In consideration of the promise of a portion of the crops and the refund of necessary advancements, she could grant a binding lease and incur an obligation to make advancements. Clothed with power to make such contracts she is entitled to enforce them and to receive their benefits. In receiving the crops from the tenants and availing herself of the services and facilities of plaintiffs in error to advantageously market the cotton, Mrs. Whittle was only adopting a convenient and usual means of securing the full fruits of her own binding contracts with her tenants. The husband has been made as impotent as the wife formerly was in matters pertaining to renting the wife's separate lands and collecting and disposing of rents of such lands, including the enforcement of all essentially incidental contractual obligations. This means that the husband acts lawfully in such matters only to the extent of his derivative power from his wife, that is, as her authorized agent. The wife has here succeeded to the authority formerly confided to the husband. It follows that the facts found by the trial court and offered to be proven by plaintiffs in error did not

warrant the complete discharge which Mrs. Whittle was awarded under the judgment of the trial court as affirmed by the court of Civil Appeals.

The judgments of the District Court and of the Court of Civil Appeals are both reversed and this case is remanded to the District Court for a new trial.